**Al AINSWORTH, Plaintiff–Appellee,**

v.

**Sam SKURNICK, Defendant–Appellant.**

No. 89–5701.

United States Court of Appeals, Eleventh Circuit.

Aug. 17, 1990.

Sam Skurnick, Stamford, Conn., pro se.

Russell L. Forkey, James F. Falco, Deerfield Beach, Fla., for plaintiff-appellee.

Before KRAVITCH, Circuit Judge, RONEY * and ALDISERT **, Senior Circuit Judges.

PER CURIAM:

CERTIFICATION FROM THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT TO THE SUPREME COURT OF FLORIDA PURSUANT TO ARTICLE 5, SECTION 3(b)(6) OF THE FLORIDA CONSTITUTION.

TO THE SUPREME COURT OF FLORIDA AND THE HONORABLE JUSTICES THEREOF:

It appears to the United States Court of Appeals for the Eleventh Circuit that this case involves an important question of Florida law which is determinative of the outcome of the cause, for which there is no clear precedent in the decisions of the courts of Florida. The question involves an interpretation of Fla.Stat. § 517.12, specifically the determination of when a sale of securities is considered to have been made in Florida so as to trigger the application of the automatic damage provisions of Fla.Stat. § 517.211.

* *See* Rule 34–2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

** Honorable Ruggero J. Aldisert, Senior U.S. Circuit Judge for the Third Circuit, sitting by designation.

## I. Style of the Case

The style of the case in which this certification is made is Al Ainsworth, plaintiff-appellee, versus Sam Skurnick, defendant-appellant, Case No. 89–5701, United States Court of Appeals for the Eleventh Circuit, on appeal from the United States District Court for the Southern District of Florida.

## II. Nature of Appeal

This is an appeal from a district court order granting a petition to vacate an arbitration award of the National Association of Securities Dealers and entering judgment for $54,108.78 against the defendant securities broker for violating section 517.-12, Florida Statutes (1989), which requires a broker selling securities to be registered in Florida.

The district court's Order Vacating Arbitration Award and Entering Judgment for Petitioner, from which this appeal was taken, is attached hereto as Appendix 1.

## III. Statement of the Facts

Following is a brief statement of the facts, as may be more fully amplified by the district court's order, the briefs and the record on appeal.

Plaintiff Al Ainsworth is a Florida resident. After reading a 1976 article related to defendant Sam Skurnick's success with small market speculators, Ainsworth solicited Skurnick's services by mail. Mailing funds to New York where Skurnick is a registered broker, Ainsworth made a net investment of $1,100 which approximated $12,000 in 1985 when Ainsworth chose to terminate Skurnick's discretionary authority over the securities account.

Ainsworth claimed damages against Skurnick, asserting *first:* that Skurnick sold securities to him by mail without complying with the registration requirements of Florida's securities statutes, and *second:* that Skurnick committed common law breach of fiduciary duty, fraud, deceit, and negligence in the management of Ainsworth's securities account.

Ainsworth's claim against Skurnick went before a National Association of Securities Dealers, Inc. (NASD) arbitration panel which found for the claimant, but assessed no damages. Finding the arbitrators' order vague and cursory, the district court vacated and remanded for interpretation. When an arbitration award can be interpreted in a variety of ways, it is normal to remand for clarification. *San Antonio Newspaper Guild Local 25 v. San Antonio Light Div.*, 481 F.2d 821, 824–25 (5th Cir.1973).

The arbitrators explained that although Skurnick was found negligent, the claimant sustained no damages and proof of statutory violations were not established. On review, the district court affirmed the decision of the arbitrator, insofar as it denied damages on the common law negligence claims, but found a statutory violation in Skurnick's failure to register in Florida. The district court held that mandatory damages were required, stating that one who sells securities by mail to a person located in Florida is selling securities in Florida and must be registered in accord with Fla.Stat. § 517.12.[1] A violation of § 517.12 automatically triggers damages under Fla.Stat. § 517.211,[2] which gives the purchaser the option of voiding the sale and instituting an action for rescission if he

---

1. **517.12 Registration of dealers, associated persons, investment advisers, and branch offices.**
   (1) No dealer, associated person, or issuer of securities shall sell or offer for sale any securities in or from offices in this state, or sell securities in this state to persons of this state from offices outside this state, by mail or otherwise, unless the person has been registered by the department pursuant to the provision of this section.

2. **517.211. Remedies available in cases of unlawful sale**

(1) Every sale made in violation of … s. 517.12 may be rescinded at the election of the purchaser; and the person making the sale and every director, officer, partner, or agent of or for the seller, if the director, officer, partner, or agent has personally participated or aided in making the sale, is jointly and severally liable to the purchaser in an action for rescission, if the purchaser still owns the security, or for damages, if the purchaser has sold the security …

still owns the security, or permits an action for damages if the security has been sold. After Ainsworth produced evidence of $54,-108.78 in damages, judgment was entered against Skurnick in that amount. There appears to be no doubt that Skurnick acted as a securities dealer for Ainsworth within the meaning of Fla.Stat. § 517.021(9).[3] It is clear under § 517.12 that one who is not registered may not *sell securities in this state* to persons of this state from offices outside this state, by mail or otherwise,[4] but unless the sale is deemed to take place within the state, there can be no statutory liability.

## IV. *Reasons for Certification*

The district court had no difficulty with the issues in this case, nor do we, until confronting the issue of whether the subject sales were made in Florida. As to this the district court said:

> Unless Skurnick actually sold securities in Florida within the meaning of Fla.Stat. § 517.12, no liability may be found pursuant to that section. This Court has found no cases directly under § 517.12 which explain what it means to sell a security in Florida.

The briefs of the parties and our own independent research have failed to disclose any cases which would control this issue of Florida law. The district court approached the question by analogy to Florida's long-arm statute. In this regard we have detailed the activities of Skurnick, insofar as they might relate to this approach, and attach them here as Appendix 2. There is no guidance under the decided cases in Florida, however, as to how the Florida courts would deal with this issue. Since the decision has the potential of effecting cases beyond the boundaries of the present controversy, it seems appropriate to have the Supreme Court of Florida make the determination as to whether, under the

facts of this case, securities were sold in Florida so that the seller would be required to register under Florida law.

## V. *Question to be Certified*

Whether, under the undisputed facts of this case, the transactions between the parties constituted a sale of securities in Florida within the meaning of Fla.Stat. § 517.12.

Our statement of the question is not designed to limit the Supreme Court of Florida in its consideration of the problems posed by this entire case. In order to assist consideration of the case, the entire record, along with the briefs of the parties, shall be transmitted to the Supreme Court of Florida.

QUESTION CERTIFIED.

### APPENDIX 1

United States District Court Southern District of Florida.

In the Matter of Arbitration Between: Al Ainsworth, Petitioner,

and

Sam Skurnick, Respondent.

No. 87–6464–CIV–PAINE.

June 19, 1989.

### ORDER VACATING ARBITRATION AWARD AND ENTERING JUDGMENT FOR PETITIONER

This cause comes before the Court upon Petitioner Al Ainsworth's Renewed Petition to Vacate Arbitration Award (DE 23).

Ainsworth's original claim was submitted to arbitration before a panel of the National Association of Securities Dealers, Inc., ("NASD"). Ainsworth asserted claims against Skurnick alleging violations of Fla.

---

**3. 517.021. Definitions**

When used in this chapter, unless the context otherwise indicates, the following terms have the following respective meanings: ...
9(a) "Dealer" includes any of the following:
1. Any person, other than an associated person registered under this chapter, who engages,

either for all or part of his time, directly or indirectly, as broker or principal in the business of offering, buying, selling, or otherwise dealing or trading in securities issued by another person.

**4.** *State v. Houghtaling*, 181 So.2d 636 (Fla.1965).

Stat. § 517.12, Fla.Stat. § 517.301, and common law breach of fiduciary duties, fraud, deceit and negligence. The matter was submitted to arbitration and an evidentiary and testimonial hearing was held on April 20, 1987. The arbitral panel's award stated in pertinent part: "... And, that having heard and considered the proofs of the Parties, have decided and determined that in full and final settlement of the above-referenced matter, that they find for the Claimant but that he sustained no damages ..."

Ainsworth moved this Court to vacate the arbitration award on grounds of evident partiality and manifest disregard of the law. Florida Statutes, Chapter 517 contains a built-in provision for damages, but despite a finding for Ainsworth, no damages were awarded. This Court's Order of Remand (DE 21) stated:

> The arbitration award rendered by the arbitration panel does not specifically state that Respondent violated Fla.Stat. § 517.12, a statutory provision which triggers the application of the mandatory damages provision, Fla.Stat. § 517.211. The award is vague and cursory. It fails to adequately explain how the conclusion was reached. This Court is disturbed by the arbitration panel's conduct. As a matter of fairness, the parties are entitled to know the specifics of the decision and the rationale. In essence, the vagueness invites speculation and emasculates effective judicial review.
>
> As it stands, the Court's role in review of arbitration awards is limited. It is not the function of the Court to review the merits or construe the meaning of the award. *American Federation of State, County and Municipal Employees, Local Lodge No. 1803 v. Walker County Medical Center*, 715 F.2d 1517, 1519 (11th Cir.1983). In that case there was a question as to the meaning of the term "suitable position" in an employment dispute arbitration award. The Appellate Court, Eleventh Circuit, remanded the case with further instructions to the orig-

inal arbitrator for clarification since the term was capable of two very different interpretations.

> Similarly, since the arbitration award below (# 86–1021) is capable of two very different interpretations, the proper course under these circumstances is to allow the arbitrators to resolve the ambiguity. If a statutory violation is found, damages should be awarded. However, if the liability was for a common law violation, rather than a statutory violation, then an award of damages is not mandatory. Without engaging in speculation, it is impossible for this Court to properly assess whether the arbitrators imposed statutory liability on Sam Skurnick. Until such a clarification is made, Petitioner cannot begin to prove nor can this Court determine whether the arbitration panel was evidently partial or acting in manifest disregard of the law in not awarding Al Ainsworth damages.

(DE 21 at 2–3). The arbitration panel was instructed to clarify which of the five counts Sam Skurnick had violated.

On or about March 4, 1988 the arbitration reconvened for deliberation on the issues raised by this Court's Order of Remand. On April 8, 1988 the Arbitrators issued their new award which states in pertinent part:

> And, having now considered all evidence respecting each and every claim submitted for arbitral determination in connection with the Respondent's position as the Claimant's broker/dealer, we find that the Respondent was negligent in the handling of the Claimant's account, however, the Claimant sustained no damages;
>
> And, therefore, we conclude that the Claimant is not entitled to recover any compensatory damages, nor any punitive damages and interest; ...
>
> And, further it is our conclusion that the Claimant has not established his right to recover on any of the other claims filed in this proceeding.

Thus, pursuant to this Court's order, the arbitration panel clarified its earlier ruling by explaining that: 1) it had found Sam Skurnick negligent; 2) Al Ainsworth sustained no damages on account of Skurnick's negligence; and 3) Ainsworth failed to prove any of his other claims, including a violation of Fla.Stat. § 517.12.

This Court finds that there exists no viable reason to vacate the arbitration panel's award as it relates to the finding of negligence or damages attributable to Skurnick's negligence. Additionally, the panel's determination that Ainsworth did not establish his right to recover on his claims of breach of fiduciary duties, fraud, deceit, and violation of Fla.Stat. § 517.301 was justified by the law and the facts. Indeed, Ainsworth does not truly contest this point. Instead, Ainsworth focuses on the arbiters' award as it relates to the remaining statutory cause of action, violation of Fla.Stat. § 517.12. Accordingly, this Court's review of the arbitration panel's finding will focus on whether, in finding that Al Ainsworth did not prove that Skurnick violated § 517.12, the arbiters exhibited "evident partiality" or "manifest disregard of the law."

Florida Statute § 517.12 provides in relevant part:

*Registration of dealers, associated persons and investment advisors*

(1) No dealer, associated person, or issuer of securities shall sell or offer for sale any securities in or from offices in this state, or sell securities in in this state to persons thereof from offices outside this state, by mail or otherwise, unless the person has been registered with the department pursuant to the provisions of this section.

The intent of the statute is to protect investors. *Rudd v. State*, 386 So.2d 1216 (Fla. 5th DCA 1980). Florida Statute § 517.211 provides that "Every sale made in violation of either Section 517.07 or Section 517.12 may be rescinded at the election of the purchasers;" F.S. § 517.211. Thus, if a defendant is found to have violated Section 517.12, damages are automatic pursuant to Section 517.211.

To prevail on his cause of action under Section 517.12, Ainsworth must prove that at the times relevant hereto:

1) Skurnick was a dealer of securities, who

2) sold securities,

3) in Florida from offices outside Florida, by mail or otherwise, and that

4) Sam Skurnick was not at the time of the sale registered with the Department of Banking and Finance pursuant to the provisions of Section 517.12.

The only one of these elements to which Skurnick readily admits is that he was never registered with the Florida Department of Banking and Finance. (See Arbitration Transcript p. 13–14).

The evidence from the arbitration hearing makes it clear that Skurnick was a dealer of securities. Skurnick defends that he acted merely as a broker, not a dealer. However, Florida Statutes Section 517.021(7) provides: "'broker' means 'dealer' as herein defined." Section 517.021(9) defines a dealer as:

1. Any person, other than an associated person registered under this chapter, who engages either for all or part of his time, directly or indirectly, as broker or principal in the business of offering, buying, selling, or otherwise dealing or trading in securities issued by another person.

The above definition of dealer precisely describes the role Skurnick played for Ainsworth. Ainsworth opened an account with Skurnick and Skurnick traded securities for Ainsworth. At arbitration Skurnick stated that he was in the business of brokering stocks listed on the New York Stock Exchange. (Arb. Transcript p. 11). Skurnick admitted that Al Ainsworth had an account with Skurnick, (Arb. Transcript p. 24); that Ainsworth signed a standard customer's agreement and a joint account agreement, (Arb. Transcript p. 27); and that Ainsworth

signed over to Skurnick discretionary account authority, (*Id.*). Exhibits before the arbitration panel include numerous client confirmation documents. These documents identify themselves as coming from the offices of Sam Skurnick, a member of the New York Stock Exchange; they show the client to be Al Ainsworth at a Florida address; and each confirmation tells the stock bought or sold, the number of shares, the trade date, the total amount paid, the commission paid, etc. , Each confirmation also states: "Payment for securities purchased and delivery of securities sold must be received by Sam Skurnick on or before the due date (as noted above) as prescribed by the regulations of the New York Stock Exchange, Inc." Checks were to be made payable to Prudential–Bache Securities. Other exhibits, such as the Securities Account Statements show Sam Skurnick to be Ainsworth's account executive and give a summary of stocks traded. Skurnick described his relationship with Ainsworth as follows: "I served as an introducing broker and I opened up the account for Mr. Ainsworth, I furnished the clearing firm the document which they required and his name and address. And they were responsible for the safety of the securities and money and sending him confirmations and monthly statements. And basically I was responsible for the handling of the account." (Arb. Transcript p. 33). Skurnick stated that he traded stocks for Ainsworth. (Arb. Transcript p. 51). Moreover, in their award, the arbiters refer to Skurnick as Ainsworth's "broker/dealer," clearing implying a finding that Skurnick was Ainsworth's broker/dealer. Under Florida law, one who trades stocks for another is acting as a dealer. The evidence produced at the arbitration hearing makes it abundantly clear (indeed, no other reasonable interpretation is possible) that Skurnick acted as a securities dealer for Ainsworth.

To prevail under Section 517.12, Ainsworth also has the burden of proving that, in Skurnick's role as dealer, Skurnick sold securities in Florida, to Ainsworth. Clearly, Skurnick sold securities to Ainsworth within the meaning of Fla.Stat. § 517.12 and § 517.021(20) (defining "sell"). Skurnick testified that he sold stocks for and to Ainsworth. (*see e.g.* Arb. Transcript p. 50–51).

In *Lewis v. Walston & Co., Inc.*, 487 F.2d 617 (5th Cir.1973) the old Fifth Circuit addressed the issue of who is a seller under Section 12(1) of the Securities Act of 1933. Section 12(1) imposes liability for the sale of unregistered securities. The court held that

> ... parties who participate in the negotiations of or arrangements for the sale of unregistered securities "sell" those securities within the meaning of § 12(1). Brokers have long been held liable as sellers under § 12(2), as have other parties responsible for bringing about sales of securities they themselves do not own.

*Id.* at 621 (citations omitted). The Fifth Circuit explained that the test for whether a participant in the arrangements for a sale "sells" securities is "whether the party is a 'proximate cause' of the sale." *Id.* at 622. The finding of proximate cause turns on whether the party's actions were a "substantial factor" in bringing about the purchases. *Id.* The above test represents a sensible approach for determining whether Skurnick "sold" securities to Ainsworth. Under the above test, Skurnick was clearly a seller of securities to and for Ainsworth. During most of their business relationship, Skurnick had discretionary authority over Ainsworth's account; the decision whether to buy or sell securities was Skurnick's.

The only issue which remains is whether the subject sales were made in Florida. Skurnick maintains that because he did all his business in his offices in New York and Connecticut, through brokerage houses also outside of Florida, that he never sold securities in Florida. Unless Skurnick actually sold securities in Florida within the meaning of Fla.Stat. § 517.12, no liability may be found pursuant to that section. This Court has found no cases directly under § 517.12 which explain what it means to sell a security in Florida. However,

cases interpreting Florida's long-arm statute help in this regard. Fla.Stat. Section 48.193(1)(a) provides that any person "... carrying on a business or business venture in this state ..." is subject to jurisdiction of the courts of Florida. The Supreme Court of Florida in *Dinsmore v. Martin Blumenthal Assoc. Inc.*, 314 So.2d 561 (Fla.1975) discussed what it means to engage in a business venture in Florida: "The activities of the person sought ... must be considered collectively and show a general course of business activity in the State for pecuniary benefit." 314 So.2d at 564. Under this test, Skurnick is clearly subject to the jurisdiction of Florida courts and the registration requirements of Florida apply to him, despite his protestations to the contrary. Moreover, common sense indicates, that one who sells securities by mail to a person who is in Florida is selling securities in Florida.

Accordingly, the only reasonable conclusion to be drawn from the facts adduced at the arbitration hearing is that Sam Skurnick violated Fla.Stat. Section 517.12. Because the arbiters found otherwise, this Court will vacate its ruling as being in manifest disregard of the law. *See Sheet Metal Workers International v. Kinney Air Conditioning Co.*, 756 F.2d 742 (9th Cir.1985).

As stated earlier Fla.Stat. § 517.211 provides that every sale made in violation of Section 517.12 may be rescinded at the election of the purchaser. At arbitration Ainsworth introduced expert testimony that his damages under Fla.Stat. Section 517.12 were fifty-four thousand one hundred eight dollars and seventy-eight cents ($54,108.78), with interest from April 20, 1987. This testimony was not contradicted by Skurnick. Accordingly, it is hereby

ORDERED and ADJUDGED that Petitioner Al Ainsworth's Renewed Petition to Vacate Arbitration Award (DE 23) is GRANTED. It is further

ORDERED and ADJUDGED that Judgment is entered for Al Ainsworth against

Sam Skurnick on Ainsworth's claim for Skurnick's violation of Florida Statutes Section 517.12, in the amount of fifty-four thousand one hundred eight dollars and seventy-eight cents ($54,108.78), with interest from April 20, 1987, pursuant to Florida Statutes Section 517.211. It is further

ORDERED and ADJUDGED that Petitioner Al Ainsworth's Motion for Default (DE 27) is DENIED as moot. It is further

ORDERED and ADJUDGED that Respondent Sam Skurnick's Motion to Strike Renewed Petition to Vacate is DENIED. It is further

ORDERED and ADJUDGED that the Clerk of the Court is instructed to close the file.

DONE and ORDERED.

/s/ James C. Paine
United States District Judge

### APPENDIX 2

### RECORD SUMMARY OF SKURNICK'S ACTIVITIES IN FLORIDA

1. The article which Ainsworth read relating to Skurnick's success with small accounts appeared in *Money's Worth*, a New York publication.

2. Ainsworth wrote to Skurnick in his New York office after reading the magazine article.

3. In response to Ainsworth's inquiry, Skurnick wrote to Ainsworth in Florida, including an application form and a letter which Ainsworth signed, giving Skurnick authority to open a discretionary margin account and enclosing a check made to Bruns, Nordeman, Rea & Co.

4. Ainsworth completed the application form in Florida and returned it to Skurnick's New York office.

5. Monthly statements were sent to Ainsworth in Florida by the firms through which Skurnick dealt, Bruns Nordeman and Bache. Skurnick's name was prominently displayed on the statements.

6. Ainsworth is deaf and never spoke personally with Skurnick over the telephone. There were occasions when Skurnick spoke with Ainsworth's nephew. It is unclear from the record, however, whether Skurnick placed any of the telephone calls.

7. Skurnick speaks of writing letters to his clients. (R) 46 and 47:25–1.

8. Skurnick testified that he wrote to Ainsworth in Florida, suggesting that he get off margin. (R) 47:9.

9. Skurnick sent a rebate form to Ainsworth in Florida which Ainsworth returned through the mail. (R) 53.

10. Skurnick wrote letters to his clients telling them to "hold on." (R) 54.

11. Skurnick wrote to Ainsworth in Florida concerning risk-spreading through diversification. (R) 71:23.

12. Skurnick placed ads in the *Wall Street Journal.*

13. Over the years of doing business, various correspondence took place between Ainsworth and Skurnick.

14. Ainsworth testified that he made inquiries of Skurnick a few times and received long-hand replies through the mail. (R) 109.